UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JOSEPH HENNING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 11-11428-WGY |
| WACHOVIA MORTGAGE, FSB, n/k/a | ) | |
| WELLS FARGO BANK, N.A.,[1] | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM AND ORDER

YOUNG, D.J.                                    September 17, 2013

Because it replaces with federal regulation the vision of democratically elected state legislators as to what is best for their citizens, federal "[p]reemption is strong medicine, not casually to be dispensed." Brown v. United Airlines, Inc., 720 F.3d 60, 71 (1st Cir. 2013) (quoting Grant's Dairy—Maine, LLC v. Comm'r of Me. Dept. of Agric., Food, and Rural Res., 232 F.3d 8,18 (1st Cir. 2000)). Moreover, the law of preemption is much of a muddle. See, e.g., In re Welding Fume Prods. Liab. Litig., 364 F. Supp. 2d 669, 681 n.14 (N.D. Ohio 2005); Michael P. Moreland, Preemption as Inverse Negligence Per Se, 88 Notre Dame L. Rev. 1249, 1252-77 (2013); Ashutosh Bhagwat, Wyeth v. Levine and Agency Preemption: More Muddle or Creeping to Clarity?, 45 Tulsa L. Rev. 197, 229 (2009). In some areas—e.g., ERISA—its sweep is so broad as to be overwhelmingly rejected by scholars, leaving obedient lower courts poking around the periphery and calling for change. See DeFelice v.

---

[1] Effective November 1, 2009, Wachovia Mortgage, FSB merged with and into Wells Fargo Bank, N.A. Def.'s Mem. Supp. Mot. Dismiss 2, ECF No. 88.

<u>Aetna U.S. Healthcare</u>, 346 F.3d 442, 459-60 (3d Cir. 2003) (Becker, J., concurring) (quoting <u>Andrews-Clark v. Travelers Ins. Co.</u>, 984 F. Supp. 49, 52-53 (D. Mass. 1997)).   In others—e.g., airline deregulation— the need for uniform air transit regulation works in common-sense fashion to displace contrary local initiatives.   <u>See</u> <u>DiFiore</u> v. <u>Am. Airlines, Inc.</u>, 646 F.3d 81, 88 (1st Cir. 2011), <u>cert. denied</u>, 132 S. Ct. 761 (2011); <u>Brown</u>, 720 F.3d at 66.   This case falls somewhere in between.

## I.   INTRODUCTION

Joseph Henning ("Henning") brought suit against Wells Fargo Mortgage, N.A. ("Wells Fargo")[2] for claims arising from a mortgage-loan agreement.  Pl.'s Opp'n Mot. Dismiss ("Pl.'s Mem. Opp'n") 2, ECF No. 92.  After amending the complaint twice, Henning alleged seven claims against Wells Fargo: (1) unjust enrichment; (2) equitable relief; (3) violation of the implied covenant of good faith and fair dealing ("implied covenant"); (4) consumer protection violation under Massachusetts General Laws chapter 93A ("chapter 93A"); (5) negligence based on Massachusetts statutory duties; (6) negligence based on Federal statutory duties; and (7) breach of contract.  Third Am. Compl. Jury Demand ("Third Compl.") ¶¶ 53-73, ECF No. 73.  Wells Fargo moved to dismiss the case arguing that Henning has failed to

---

[2] Although Henning brought this action against Wachovia, F.S.B., "Wells Fargo, N.A. is the successor by merger to Wells Fargo Bank Southwest, N.A., f/k/a Wachovia Mortgage, FSB, f/k/a World Savings Bank, F.S.B. . . . ." <u>In re Currie</u>, No. 11-17349-JNF, 2013 WL 3379539, at *1 (Bankr. D. Mass. July 8, 2013) (Feeney, Bankr. J.).

state any claims upon which relief may be granted under Federal

Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), and also

that any state-law claims are preempted by the Home Owners' Loan

Act ("HOLA"), 12 U.S.C. §§ 1461-1470.  Def.'s Mem. Supp. Mot.

Dismiss ("Def.'s Mem. Supp.") 2, ECF No. 88.  Henning opposed

the motion to dismiss.  Pl.'s Mem. Opp'n 1.

**A.   Procedural Posture**

On or around May 15, 2009, Henning filed the original

complaint against Wachovia Mortgage Corporation ("Wachovia"),

now Wells Fargo, in the Massachusetts Superior Court sitting in

and for the County of Middlesex.  Notice Removal ¶ 1, ECF No. 4-

1.  Wachovia removed the case to this court on June 19, 2009,

id. at 5, where it was initially referred to Judge Ponsor,

Elect. Notation, ECF No. 2.  Wachovia answered the complaint on

July 17, 2009, Answer Affirm. Defense, ECF No. 7, and moved for

summary judgment on October 20, 2009, Mot. Summ. J., ECF No. 24.

Henning's opposition was filed on November 1 2009, Pl.'s Opp.

Mot. Summ. J., ECF No. 33.[3]  Before a ruling on summary judgment

was issued, Henning amended his complaint with leave of the

court on March 2, 2010. Am. Compl./Class Action Compl./Jury

Demand, ECF No. 51.

---

[3] Wachovia filed a reply to Henning's response on November 9, 2009, Reply Br. Supp. Mot. Summ. J., ECF No. 39, and Henning, in return, filed a sur-reply one week later, Pl.'s Sur-Reply Def.'s Mot. Summ. J., ECF No. 42.

On the same day as the amended complaint was filed, Judge Wolf consolidated Henning's case with another action stemming from mortgages "for which Wachovia was allegedly responsible." Bettinelli v. Wells Fargo Home Mortg., Inc., No. 09-11079-MLW, 2010 WL 2998608 (D. Mass. July 23, 2010) (Wolf, J.). Judge Wolf was assigned the consolidated case. Id. In August, Henning filed a second amended complaint. Second Am. Compl./Jury Demand, ECF No. 58.

On August 19, 2010, United States Judicial Panel on Multidistrict Litigation transferred the case to the Northern District of California. Conditional Transfer Order (CTO-5), ECF No. 60. The consolidated case reached a settlement, and because Henning timely opted out of the May 17, 2011 class-action settlement in that district, Judge Fogel ordered the case transferred back to the District of Massachusetts on June 9, 2011. Order Granting Pl.'s Mot. Vacate J. Transfer Case, ECF No. 69.

Henning filed a third amended complaint in the District of Massachusetts on August 29, 2012. Third Compl. The case was assigned to this Session after Judge Wolf took senior status on January 2, 2013. Clerk's Note, ECF No. 82. This Court heard the motion to dismiss at issue on January 29, 2013. Clerk's Note, ECF. No. 94.

    **B.   Factual Allegations**

Henning alleges the following facts.  Henning executed a mortgage loan with World Savings Bank ("World") in 2006 in the amount of $215,250, and an Equity Credit Line of $43,000 in the same year.  Third Compl. ¶¶ 3, 52.  Wells Fargo is the successor-in-interest to this loan, having merged with Wachovia, which had previously merged with World.  Id. ¶ 3; Mem. Law Supp. Mot. Summ. J. 2, ECF No. 25.  The loan was a "stated income" loan,[4] and World allegedly never "determin[ed] the reasonableness" of Henning's income as stated on the loan application before approving him, Third Compl. ¶ 14, rather, World considered only whether he could make the initial monthly payment, id. ¶ 45.  Moreover, during the loan application process, World calculated his debt-to-income ("DTI") ratio without deducting business expenses Henning incurred as a salesman from his income.  Id. ¶¶ 4-6.  This classification, Henning alleged, runs counter to generally accepted underwriting procedure and resulted in a real DTI ratio of 94.5%, which exceeds the allowable DTI ratio under customary subprime lending guidelines.  Id.  In 2008, Henning defaulted on his obligations, and currently faces foreclosure. Id. ¶ 10.  Henning also agreed to a loan modification in 2008, allegedly under the duress of

---

[4] Stated income loans do not require the borrower to provide "documentation of his or her income."  Commonwealth v. Fremont Inv. & Loan, 452 Mass. 733, 736 n.7 (2008).

default and impending foreclosure, id. ¶ 51, with terms similar to the 2006 loan.  Id. ¶ 50.

Henning further alleged that World failed to comply with certain statutory requirements during the application process. Specifically, he alleged that several forms required under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601-17, are absent from his loan file, including a Good Faith Estimate ("GFE"), a Servicing Disclosure Statement, and a Notice of Assignment, Sale, or Transfer of Servicing Rights.  Id. ¶ 9. Henning also alleged that the Initial Truth in Lending Statement & Itemization of Amount Financed form required under the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 et seq, and its implementing regulations, 12 C.F.R. §§ 225.1 et seq ("Regulation Z"), is also missing from the file.  Id.  Indeed, according to Henning's allegations, World was unable to comply with TILA because the "subject loans are not actually indexed." Id. ¶ 49.

Henning's loan is of the Payment Option Arm ("POA") variety, known at World as the "Pick-A-Payment" program.  Id. ¶ 15.  By "mathematical manipulation of interest rates and . . . back-ending most of the principle [sic]," lenders make the initial payments on these types of loans artificially low, allowing "almost anyone" to qualify.  Id. ¶ 45.  The adjustable rate note at issue allegedly fails adequately to disclose the possibility of negative amortization.  Id. ¶ 29.  Because of

this negative amortization, Henning stated that he, among many other borrowers, faced initially low payments which would later be some three to four times higher, sometimes within a few months.  Id. ¶ 46.  Wells Fargo, as successor in interest to World, allegedly had "unlimited discretion" as to the index which determines the adjustable interest rate under the note. Id. ¶ 31.

Unsophisticated consumers like Henning were subject to purportedly aggressive and predatory marketing of POA loans. Id. at ¶ 45.  World's advertising was allegedly deceptive in that it focused on the low initial monthly payments without disclosing the risks of negative amortization and the adjustable rate.  Id. ¶¶ 17-18.  This purported deception was furthered by the loan documentation which used language that, according to Henning, World knew or should have known was impenetrable to consumers in order intentionally to obscure the terms and consequences of the transaction.  Id. ¶¶ 29-32.

World approved Henning's loan likely knowing, Henning alleges, that he did not qualify based on information he had provided to them.  Id. ¶ 14.  World incentivized such approval by offering commission pay to their underwriters and loan officers.  Id. ¶ 48.  World, Henning alleges, must have known that Henning would likely default, but proceeded to approve the

loan anyway, without considering the falling real estate market and other loan products more appropriate for him.  Id. ¶ 13.

Henning alleges that as a result of World's actions, he has suffered the loss of equity, damage to his credit, and he faces impending foreclosure with resultant emotional distress.  Id. ¶ 10.  He further alleges that because of World's deceptive practices in advertising and the use of impenetrable language in mortgage documentation, Henning lost the opportunity to "comparison shop" for more appropriate loan alternatives, id. ¶ 33, and has incurred unlawful compound interest, id. ¶ 37.

### C.   Federal Jurisdiction

Jurisdiction is proper under 28 U.S.C. section 1332(a) as the amount in controversy exceeds $75,000 and the parties are citizens of different states.

As to the amount in controversy, the face value of the loan well exceeds $75,000, id. ¶ 3, and Henning originally pled $80,000 in damages, Commw. Mass Superior Ct. Dep't. Trial Ct. Woburn, Ex. 3, Civil Action Cover Sheet, ECF No. 4-3.  Complete diversity exists because Henning is a citizen of Massachusetts, Third Compl. ¶ 1, and Wachovia, the relevant party at the time this action was filed, is a federal savings bank with its home

office in Nevada,[5] Notice Removal ¶ 3.  <u>See</u> 12 U.S.C. § 1464(x)
(A "[f]ederal savings association shall be considered to be a
citizen only of the State in which such savings association has
its home office.").  Accordingly, this Court has jurisdiction
over the matter.

**II.  ANALYSIS**

   **A.   Legal Standard**

   A pleading must set forth "a short and plain statement of
the claim showing that the pleader is entitled to relief." Fed.
R. Civ. P. 8(a)(2).  In order to survive a motion to dismiss
under Rule 12(b)(6), a plaintiff must plead sufficient factual
matter, accepted as true, "to state a claim to relief that is
plausible on its face."  <u>Bell Atl. Corp.</u> v. <u>Twombly</u>, 550 U.S.
544, 570 (2007).  In addition to accepting all facts in the
complaint as true, the Court must draw reasonable inferences in
the plaintiff's favor.  <u>Langadinos</u> v. <u>Am. Airlines, Inc.</u>, 199
F.3d 68, 69 (1st Cir. 2000).

   While a probability that the defendant is liable is not
required, a plausible claim poses facts that, taken as true,
give rise to a "reasonable expectation that discovery will
reveal" liability.  <u>Twombly</u>, 550 U.S. at 556.  Neither "naked

---

[5] Diversity jurisdiction is determined by considering "the
state of facts that existed at the time of filing."  <u>Grupo
Dataflux</u> v. <u>Atlas Global Group, L.P.</u>, 541 U.S. 567, 571 (2004).

assertion[s]" of misconduct, id. at 557, nor "formulaic recitation" of the elements of a claim will suffice, id. at 555.

### B.   Federal Preemption

Wells Fargo urges that the Court should dismiss all of Henning's substantive state-law claims because they are preempted by HOLA and its implementing regulations, 12 C.F.R. §§ 500-99, which, according to Wells Fargo, occupied the field of federal lending regulation at times relevant to this litigation. See Def.'s Mem. Supp. 11.  Henning argues that this Court should interpret HOLA preemption in light of the Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, 124 Stat. 1376 (2010) ("Dodd-Frank"), which reduces the federal government's preemptive authority under HOLA.  See Pl.'s Mem. Opp'n 18 (citing Dodd-Frank § 1044).  Henning also argues that his state-law claims are not preempted because such claims complement, rather than supplant, federal regulation.  Id. at 17-18.

### 1.   Statutory Background

As a response to the Great Depression, when nearly half of all home loans were in default and credit was scarce, Congress enacted HOLA as "a radical and comprehensive response to the inadequacies of the existing state systems" of mortgage regulation.  See Fidelity Fed. Sav. and Loan Ass'n v. de la Cuesta, 458 U.S. 151, 159-60 (1982) (quoting Conference of Fed.

Sav. and Loan Ass'ns v. Stein, 604 F.2d 1256, 1257 (9th Cir.
1979)).  HOLA initially created the Federal Home Loan Bank Board
and granted its director broad authority to regulate "the powers
and operations of every Federal savings and loan association
from its cradle to its corporate grave."  Id. at 145 (quoting
Cal. v. Coast Fed. Sav. and Loan Ass'n, 98 F. Supp. 311, 316
(S.D. Cal. 1951)).  When Congress amended HOLA in 1989, it
transferred this power to the Office of Thrift Supervision
("OTS").  Dixon v. Wells Fargo Bank, N.A., 798 F. Supp. 2d 336,
353 n.6 (D. Mass. 2011) (citing 12 U.S.C. § 1462a).  As the
Supreme Court has stated, "[i]t would have been difficult for
Congress to give the [OTS] a broader mandate" pertaining to loan
regulation authority under HOLA.  See de la Cuesta, 458 U.S. at
161 (first alteration in original) (quoting Glendale Fed. Sav.
and Loan Ass'n v. Fox, 459 F. Supp. 903, 910 (C.D. Cal. 1978))
(internal quotation marks omitted); 12 C.F.R § 500.1 (granting
authority under HOLA to OTS and allowing it broad powers to
"regulate and examine savings associations").[6]

Under this broad grant of authority, OTS issued regulations
which purport to preempt state law in the areas of federal

---

[6] The loans at issue in this case originated in 2006 by
World which was chartered as a federal savings bank, and was
thus subject to OTS authority.  Aff. Billie Charles Supp. Mot.
Summ. J., Ex. B, Charter World Sav. Bank, F.S.B. §§ 1-4
("Charter"), ECF No. 28-2; Aff. Billie Charles Supp. Mot. Summ.
J., Ex. A, Certificate of Corporate Existence, ECF No. 28-1.

savings regulation.  Under 12 C.F.R. section 545.2, OTS declared

its exclusive authority "to regulate all aspects of the

operations of Federal savings associations," which was

"preemptive of any state law" addressing the same.  Under 12

C.F.R. section 560.2(a) ("section 560.2(a)"), OTS signaled its

authority to "occup[y] the entire field of lending regulation,"

in order to "facilitate the safe and sound operation of federal

savings associations," and with the intent to give them "maximum

flexibility to exercise their lending powers in accordance with

a uniform federal scheme."  Id. § 560.2(a)

        The OTS regulations set forth a test to determine if HOLA

preempts a state law.  Id. § 560.2.  A court must first consider

whether the state law at issue is one of the illustrative

examples which are definitively preempted under 12 C.F.R.

section 560.2(b) ("section 560.2(b)").  Id.  Preempted claims

under paragraph (b) are numerous and include those related to

licensing, terms of credit, disclosure requirements, and

advertising.  Id.

        If not preempted by paragraph (b), the Court must consider

whether the law in question "affects lending."  Dixon, 798 F.

Supp. 2d at 354 (citing Lending and Investment, 61 Fed. Reg.

50,951, 50,966 (Sept 30, 1996)).  If it does, a presumption

arises that the law is preempted by HOLA, but the presumption

may be rebutted by showing that the state law fits into the list

of laws not preempted under 12 C.F.R. section 560.2(c) ("section 560.2(c)"), is consistent with the policy underlying section 560.2(a), or affects lenders only incidentally.  Id.  Such laws include contract, tort, criminal, and homestead laws, 12 C.F.R. § 560.2(c), but the area of exception ought be interpreted narrowly with "any doubt . . . resolved in favor of preemption." Sovereign Bank v. Sturgis, 863 F. Supp. 2d 75, 92 (D. Mass. 2012) (Woodlock, J.) (quoting 61 Fed. Reg. at 50,966-67) (internal quotation marks omitted).

After the mortgage meltdown, however, Congress rethought the wisdom of the sweeping preemptive power it had conferred on the OTS.  Dodd-Frank "significantly diminished the extent to which HOLA and its implementing regulations may preempt state law."  Id. at 91 n.9 (citing Dodd-Frank §§ 1044, 1046 (limiting HOLA preemption to conflict, rather than field, preemption)); see also Roderick M. Hills, Jr., Exorcising McCulloch: The Conflict-Ridden History of American Banking Nationalism and Dodd-Frank Preemption, 161 U. Pa. L. Rev. 1235, 1287 (2013) (noting that Dodd-Frank likely repudiates field preemption). Courts have uniformly held, however, that the provisions of Dodd-Frank are not retroactive, and HOLA preemption applies to mortgages originated before either July 21, 2010 or July 21, 2011.  Compare, e.g., id. at 1291 (effective date of July 21, 2011); Molosky v. Washington Mut., Inc., 664 F.3d 109, 113 n.1

(6th Cir. 2011) (same); <u>Williams</u> v. <u>Wells Fargo Bank, N.A.</u>, No. 11-21233-CIV, 2011 WL 4901346, at *7 n.6 (S.D. Fla. Oct. 14, 2011) (same) <u>with</u> <u>Settle</u> v. <u>World Sav. Bank, F.S.B</u>, No. ED CV 11-00800 MMM (DTBx), 2012 WL 1026103, at *14 (C.D. Cal. Jan. 11, 2012) (effective date of July 21, 2010); <u>Copeland-Turner</u> v. <u>Wells Fargo Bank</u>, 800 F. Supp. 2d 1132, 1137-38 (D. Or. 2011) (same); <u>see also</u>, <u>Currie</u>, 2013 WL 3379539, at *1-5 (applying field preemption under HOLA to a 2006 mortgage loan).[7]  This Court follows suit.  Because the loans at issue originated before either date, Third Compl. ¶¶ 3, 50, the appropriate preemption standard to apply to Henning's claims is that extant prior to the effective date of Dodd-Frank.

### 2.    Count VII: Breach of Contract

Henning alleges that World breached its obligations under the relevant mortgages and notes by failing "to pay principal on the subject loans" as Henning made his bi-weekly payments.  <u>See</u> Third Compl. ¶ 73; <u>see also</u> <u>id.</u> ¶ 46.  While HOLA does not preempt Count VII, this Court dismisses it as Henning has failed plausibly to state a breach of contract.

---

[7] Though there appears to be a dearth of circuit precedent on the issue, this Court need not weigh in on the debate regarding whether Dodd-Frank became effective as to mortgages on July 21, 2010 or 2011 because the loans at issue in the case originated in 2006, and the modification was in 2008.  Third Compl. ¶¶ 3, 50.

Contract law does not necessarily "impose requirements" on lenders, and thus does not fall within the ambit of section 560.2(b).  E.g., Sturgis, 863 F. Supp. 2d at 94; In re Ocwen Loan Servicing, LLC. Mortg. Servicing Litig., 491 F.3d 638, 645 (7th Cir. 2007).  A claim for breach of contract seeks to enforce any contracting party's "duty to honor promises made." Dixon, 798 F. Supp. 2d at 358.  Because Henning's claim deals broadly with the relationship between the mortgagor and mortgagee, and the manner in which payments are allocated under the mortgage, it "affects lending," giving rise to a rebuttable presumption of preemption.  Sturgis, 863 F. Supp. 2d at 94; see 61 Fed. Reg. at 50,966.

The presumption of preemption is rebutted in this case. Contract law is not preempted so long as it only "incidentally affect[s] . . . lending operations."  12 C.F.R. § 560.2(c). Many courts have held that breach of contract claims are not preempted where they do not seek to impose requirements on lenders regarding the substance of the contract, but only hold the lender true to its word.  E.g., Sturgis, 863 F. Supp. 2d at 94-95; In re Ocwen Loan Servicing, 491 F.3d at 645; McAnaney v. Astoria Fin. Corp., 665 F. Supp. 2d 132, 164 (E.D.N.Y. 2009); Reyes v. Downey Savings and Loan Ass'n, F.A., 541 F. Supp. 2d 1108, 1114 (C.D. Cal. 2008); cf. Dixon, 798 F. Supp. 2d at 358 (holding promissory estoppel claim only affects lending

operations incidentally because it imposed on the defendant-lender only those obligations applicable to all businesses and contracting parties).

Here, Henning seeks only to hold Wells Fargo to obligations its predecessor in interest purportedly agreed to: the payment of principal coincident with Henning's bi-weekly payments.  See Third Compl. ¶ 73.  Seeking to hold a contracting party to its word is not unique to the mortgage-lending realm.  See Dixon, 798 F. Supp. 2d at 358.  As his contract claim only "incidentally affect[s]" World's lending operations, it is not preempted by HOLA.  See 12 C.F.R. § 560.2(c).

While not preempted by HOLA, Henning fails to state a plausible breach of contract claim.  Henning's allegation that World breached an obligation to apply his monthly payment to the principal loan amount is flatly contradicted by the terms of the mortgage and note.

In the absence of fraud, a signatory to a contract is bound by its terms whether he has read and understood it or not.  See Willens v. Univ. of Mass., 570 F.2d 403, 405 (1st Cir. 1978) (citing Spritz v. Lishner, 355 Mass. 162, 164 (1969)). At the motion to dismiss stage this Court may take notice of public documents, such as the mortgage and note here, which bear on the merits of Henning's claims.  See Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993); see also In re Smith-Pena, 484 B.R. 512, 515

n.1 (Bankr. D. Mass 2013) (Bailey, Bankr. J.).   When such

documents contradict allegations in the complaint, the documents

trump the allegations.   See Clorox Co. P.R. v. Proctor & Gamble

Commercial Co., 228 F.3d 24, 32 (1st Cir. 2000) (citing Northern

Ind. Gun & Outdoor Shows, Inc., v. City of South Bend, 163 F.3d

449, 454 (7th Cir. 1998)).

     In Davis v. World Sav. Bank, F.S.B., the court dismissed a

breach of contract claim predicated on the defendant-lender's

failure to apply any portion of the plaintiff-borrower's initial

monthly payments to the principal of the subject POA-mortgage

loan.   806 F. Supp. 2d 159, 172 (D.D.C. 2011).   The note stated

that initial monthly payments might not be sufficient to cover

accruing interest, creating deferred interest which itself would

be added to the principal and accrue interest, and that payments

would adjust annually accordingly.   Id. at 173.   These

statements indicated to the court that the lender had never

agreed to apply any portion of the initial monthly payments to

principal at all.   Id.   Because the borrower's claims that the

lender "fail[ed] to apply any of the initial monthly payments to

principal [were] contrary to the express terms of the Note," the

claim was dismissed.   Id.

     The allegations and express terms at issue here are

strikingly similar to those the court considered in Davis.   In

the original mortgage, World promised to apply Henning's bi-

weekly payments to the principal amount only after applying it
to: (1) prepayment charges under secured notes; (2) advances
owed to the lender; (3) amounts due under the "Escrow Accounts"
provision in the mortgage agreement; (4) interest due under
secured notes; and (5) deferred interest due under secured
notes.  Aff. Lisa Beens Supp. Mot. Summ. J. ("Aff. Lisa Beens"),
Ex. B, Mortgage ¶ 3, ECF No. 27-2.  The note states that
Henning's initial bi-weekly payments "may not be sufficient to
pay the entire amount of interest accruing on the unpaid
[p]rincipal balance."  Aff. Lisa Beens Supp. Mot. Summ. J., Ex.
A, Adjustable Rate Mort. Note ¶ 3(B), ECF No. 27-1.  The note
also states that when bi-weekly payments are insufficient to
cover accrued interest, unpaid interest will be rolled into the
principal to itself accrue interest.  Id. ¶ 3(E).

     These same express terms were present in Davis, 806 F.
Supp. 2d at 173-74, and compelled the conclusion in that case,
as they do here, that World never agreed to apply payments to
principal until after interest and deferred interest obligations
were satisfied.  See id.  Indeed, the central issue Henning
takes with the POA loan is that by its own terms it effectively
ensures the mortgagor never actually reaches the principal and
instead continually pays ever-increasing interest.  See Third
Compl. ¶¶ 17-30.  While extremely distasteful, this does not
constitute a promise to apply payments to principal.  Because

18

World never promised to apply payments to principal in the
manner asserted by Henning, it cannot have breached the mortgage
contract by failing to do so.  See Davis, F. Supp. 2d at 173;
Shaterian v. Wells Fargo Bank, N.A., 829 F. Supp. 2d 873, 883
(N.D. Cal. 2011) (dismissing plaintiff-borrower's breach of
contract claim alleging failure to apply payments to POA-
mortgage principal because defendant-lender never expressly
promised to do so); Jones-Boyle v. Washington Mutual Bank, FA,
No. CV 08-02142 JF (PVT), 2010 WL 2724287, at *12 (N.D. Cal.
July 8, 2010) (same).  While not expressly preempted by HOLA,
Henning's breach of contract claim is subverted by the express
terms of the mortgage and note, and is accordingly dismissed.
See Clorox Co. P.R., 228 F.3d at 32 (citing Northern Ind. Gun &
Outdoor Shows, Inc., 163 F.3d at 454).

### 3.    Count III: Breach of Implied Covenant of Good
###       Faith and Fair Dealing

Henning bases his claim for breach of the implied covenant
on World's "piggy-back[ing]" an additional line-of-credit on his
2006 mortgage, using up all of the remaining equity in his
property.  Pl.'s Mem. Opp'n 6.  According to Henning, this fact
increased the likelihood of default and decreased his
eligibility for refinancing.  Id.  Because Henning's claim would
effectively impose regulations on a lender, its effect on

lending is more than incidental, it is inconsistent with the
policy underlying section 560.2(a), and it is preempted by HOLA.

The implied covenant is present in every contract made in
Massachusetts and requires that no party to a contract undertake
actions which would prejudice the others in their enjoyment of
the fruits of the agreement.  Anthony's Pier Four, Inc. v. HBC
Assoc., 411 Mass. 451, 471-72 (1991) (quoting Druker v. Roland
Wm. Jutras Assoc., Inc., 370 Mass. 383, 385 (1976)).  Because it
is a state law of general applicability, an implied covenant
claim is not preempted by section 560.2(a). Such a claim may,
however, "be preempted if the [lender's] alleged misconduct fits
into one of the categories identified in [section 560.2] (b),"
or, if the effect on lenders is "more than incidental" as per
section 560.2(c). See Dixon, 798 F. Supp. 2d at 357; see also
Lopez v. Wachovia Mortg., No. 2:09-cv-01510, 2009 WL 4505919, at
*5 (E.D. Cal. Nov. 20, 2009) (dismissing implied covenant claim,
among other state law claims, because they were "based upon
allegations pertaining to the [defendant-lender's] lending
operations," and were thus preempted by HOLA).

Section 560.2(b) provides that HOLA preempts state law
seeking to impose requirements regarding "[p]rocessing,
origination, servicing, sale or purchase of, or investment or
participation in, mortgages." 12 C.F.R. § 560.2(b)(10).  With
his implied covenant claim, Henning essentially seeks to

regulate whether a lender may offer additional loan products to a borrower after consummating a first mortgage.  See Pl.'s Mem. Opp'n 6.  A favorable ruling would have a greater than incidental effect on lenders regarding what may be offered to potentially over-leveraged borrowers and when.  See 12 C.F.R. § 560.2(c); Remo v. Wachovia Mortg., No. C11-02935 TEH, 2011 WL 3448234, at *5 (N.D. Cal. Aug. 5, 2011) (holding preempted state claims, including implied covenant claim, predicated on "the very fact that [defendant-lender] entered the loan with [plaintiff-borrower], and the circumstances under which [plaintiff-borrower] did enter the loan"); cf. Haehl v. Washington Mut. Bank, F.A., 277 F. Supp. 2d. 933, 942-43 (S.D. Ind. 2003) (holding state claims preempted under section 560.2(b) because a ruling favorable to the plaintiff would have the effect of imposing requirements on defendant-lender); Munoz v. Fin. Freedom Senior Funding Corp., 573 F. Supp. 2d 1275, 1281 (C.D. Cal. 2008) (same). Because of its greater than incidental effect on lenders in an area the OTS governed, Henning's claim is also inconsistent with the policy of uniformity and field preemption under section 560.2(a). Thus, Henning has not rebutted the presumption of preemption under HOLA.

While not expressly preempted, Henning fails to rebut the presumption of preemption with respect to his implied covenant claim, which is accordingly dismissed.

### 4.   Count I: Unjust Enrichment

"The doctrine of unjust enrichment exists in the hazy realm of quasi-contract and restitution."  Brown v. United Airlines, Inc., 720 F.3d 60, 70 (1st Cir. 2013); see also, e.g., Metro Life Ins. Co. v. Cotter, 464 Mass. 623, 643 (2013); Salamon v. Terra, 394 Mass. 857, 859 (1985); Restatement (Third) of Restitution & Unjust Enrichment § 1 (2011).  To support his unjust enrichment claim, Henning alleges that Wells Fargo's deceptive advertising, its potential knowledge that Henning would likely default when it approved him, and its lack of disclosure of the consequences regarding negative amortization of POA loans were wrongful acts resulting in Wells Fargo's enrichment.  See Third Compl. ¶¶ 54, 17-19, 29, 10.  Henning has also alleged that World improperly determined his DTI ratio by failing to verify Henning's financial information.  Id. ¶¶ 4-6. Because allowing Henning's unjust enrichment claim would affect lending operations under section 560.2(c) more than incidentally, the Court determines that Henning's unjust enrichment claim is preempted by HOLA.

The first step in the HOLA preemption analysis is to determine whether a state-law claim is expressly preempted by section 560.2(b), and if it is, the analysis ends there.  61 Fed. Reg. 50,951, 50,966.

In Dixon, this Court considered whether HOLA preempted a state law claim for promissory estoppel. In that case, the plaintiff-borrower alleged that the defendant-lender promised that if plaintiff defaulted and provided certain financial information, the defendant would consider a loan modification in the plaintiff's behalf. Dixon, 798 F. Supp. 2d at 339. The defendant, however, never considered the plaintiff for such modification before beginning foreclosure proceedings. Id.

The Court concluded that the claim was not expressly preempted by section 560.2(b) because it "s[ought] not to attack Wells Fargo's underlying loan servicing policies and practices, but rather to hold the lender to its word, on which the Dixons relied to their detriment." Id. at 357. The claim "relate[d] to" federal lending regulation, but did not "purport[] to impose requirements" on the lender other than "to hold the lender to its word." See id. at 357 (quoting 12 C.F.R. § 560.2(b)) (alteration in original).

The Court explained that because HOLA does not give rise to a private right of action, id. at 360, Congress could not have intended to preempt all state claims against lenders, but only those brought as a "clandestine way of imposing requirements on lenders." Id. at 356; see Sturgis, 863 F. Supp. 2d at 95 (citing Bopp v. Wells Fargo Bank, N.A., 740 F. Supp. 2d 12, 17 (D.D.C. 2010)) ("claims are preempted . . . to the extent that

such claims attempt to directly enforce substantive lending regulations that would be preempted if the state were to recreate such regulations as statutes."). The Court in Dixon posed the relevant question as "one of function, not theory: will enforcement of the cause of action interfere with or contravene lending . . . ?" 798 F. Supp. 2d at 356; see id. (quoting McAnaney, 665 F. Supp. 2d at 164 n.36) ("If states could not provide protection to consumers through traditional state-law causes of action with only incidental effect on lending, then federal savings associations effectively could 'use preemption as a shield to avoid adherence' to the commitments they make to their customers."). State claims which covertly seek to impose regulations on lenders must be distinguished from those which enforce duties applicable to all business entities. Cuevas v. Atlas Realty/Fin. Servs., Inc., No. C 07-02814 JF, 2008 WL 268981, at *3 (N.D. Cal. Jan. 30, 2008) (allowing claims to proceed past a motion to dismiss where predicated upon failure to "truthfully memorializ[e] in writing what is agreed to orally" as these are duties germane to all businesses, not unique to lenders). Because the promissory estoppel claim sought only to hold the lender to its word, it had no more than an incidental effect on lending, meaning it escaped preemption under section 560.2(c). Dixon, 798 F. Supp. 2d at 358. Similar to the promissory estoppel claim in Dixon,

24

unjust enrichment in the abstract does not seek to impose
regulations on lenders, and thus is not preempted under section
560.2(b).

The next step requires an analysis whether Henning's claim
affects lending only incidentally, or if it is "otherwise
consistent with the purposes of [section 560.2(a)]." 12 C.F.R.
§ 560.2(c).

Undergirding Henning's claim are allegations of conscious
failure to disclose regarding negative amortization, shifting
interest rates, deceptive use of impenetrable language in loan
documentation, deceptive advertising, and failure to verify
financial information.[8] See Third Compl. ¶¶ 17-19, 29, 10, 13.
This claim does not seek to enforce duties germane to all
businesses, but rather to impose requirements under the guise of
state law. See Dixon, 798 F. Supp. 2d at 356. Henning does not
seek to "hold the lender to its word," id. at 357, or to enforce
a contract term, Sturgis, 863 F. Supp. 2d at 94, but rather

---

[8] Henning urges that "in substance, all of [his] claims are
based on misrepresentations by [World]. Pl.'s Mem. Opp'n 15.
The complaint, however, is bereft of reference to any
affirmative misrepresentations by World. See Third Compl.
Also, to the extent his unjust enrichment claim is based on TILA
or RESPA violations, these are essentially further disclosure
requirements governed by federal law. Silvas v. E*Trade Mortg.
Corp., 421 F. Supp. 2d 1315, 1319 (S.D. Cal. 2006), aff'd 514
F.3d 1001 (9th Cir. 2008) (holding consumer protection
violations based on TILA violations preempted under section
560.2(b) because a favorable ruling would have provided state
remedies for violations of a federally preempted area of the
law).

challenges a lender's disclosure and advertising policy, a power reserved to the federal government. 12 C.F.R. § 560.2 (b)(9).

Section 560.2 (b)(9) explicitly preempts matters of "[d]isclosure and advertising," which appear to constitute the bulk of Henning's allegations.  See Silvas v. E*Trade Mortg. Corp., 514 F.3d 1001, 1006 (9th Cir. 2008) ("Because this claim is entirely based on E*TRADE's disclosures and advertising, it falls within the specific type of law listed in § 560.2(b).").  Issues involving "terms of credit, including amortization . . . and adjustments to the interest rate," such as those raised by Henning regarding indexing and Wells Fargo's ability to shift the rate, are also expressly preempted.  12 C.F.R. § 560.2(b)(4).  Henning challenges World's loan structure, origination, and determination of eligibility, all of which are reserved for OTS.  Id. § 560.2(b)(10).  While Henning has cast his claim as a state-law cause of action which is not expressly preempted under section 560.2(b), its substance bears on subjects meant for federal regulation under the same regulation.

To say, for example, that the amount of information disclosed by World in this case was insufficient such that retention of any payments received is unjust would effectively be to "impose [disclosure] requirements" on a federal lender by, at minimum, delineating the impermissible level.  Cf. Haehl, 277 F. Supp. 2d, at 942-43 (holding state claims, including unjust

enrichment, regarding improperly charged fees preempted because imposing liability effectively would impose requirements regarding loan-related fees).  Because the factual allegations undergirding Henning's unjust enrichment claim involve subjects wholly reserved for the federal government, see 12 C.F.R. § 560.2(b), Henning's claim more than "incidentally affect[s] the lending operations," id. § 560.2(c).

Henning's unjust enrichment claim is not "otherwise consistent with the purposes of [section 560.2(a)]."  Id.  The OTS has expressed concern that inconsistent and conflicting requirements imposed on federal lenders by the application of differing state laws affecting lending runs counter to Congress's intention that such requirements be uniform.  61 Fed. Reg. at 50,965.  This was the original purpose behind HOLA's enactment.  de la Cuesta, 458 U.S. at 159-60; cf. Fultz v. World Sav. and Loan Ass'n, 571 F. Supp. 2d 1195, 1198 (W.D. Wash. 2008) ("Permitting state common law and statutory causes of action to proceed without regard to, and unlimited by, the existing federal scheme of regulations would undermine the purposes set forth in § 560.2(a).").  Because of the potential for conflict and inconsistency in lending regulation, Henning's unjust enrichment claim is not consistent with the purposes of section 560.2(a).

Count I, Henning's unjust enrichment claim, is therefore
dismissed as preempted by HOLA.

### 5.   Count II: Equitable Relief

Henning claims equitable relief including "rescission or
reformation of his loan note and modification," and an
injunction removing the loan from his credit history as well as
stopping foreclosure on his home.   Third Compl. ¶ 58.
"[A]llegations [that] actually describe the remedies sought by
plaintiff . . . do not constitute actionable claims."   Linton v.
N.Y. Life Ins. & Annuity Corp., 392 F. Supp. 2d 39, 41 (D. Mass.
2005) (Zobel, J.) (internal quotation marks omitted); Accord
Baldwin v. Duke Energy Corp., No. 3:12CV212-MOC-DSC, 2012 WL
3564021, at *4 (W.D.N.C. July 13, 2012) report and
recommendation adopted, 3:12CV212, 2012 WL 3562402 (W.D.N.C.
Aug. 17, 2012) (dismissing equitable relief "claim" because it
was not an independent cause of action).   Thus, HOLA preemption
is a non-issue as Henning has not put forth any "law" in Count
II to preempt.   Count II is dismissed as Henning has not stated
a claim upon which relief can be granted.   Fed. R. Civ. P.
12(b)(6).

### 6.   Count VI: Negligence Based on Federal Statutory Duties

Henning alleges that World violated RESPA and TILA through
Regulation Z by failing to provide him with certain disclosure

documents relevant to his loans.  Third Compl. ¶¶ 9, 69-70.
These violations, Henning asserts, constitute negligence under
Massachusetts law, with the requisite duty established by
federal statute.  See id. ¶ 69-70.  This claim is dismissed as
preempted by HOLA.

Again, tort law is not expressly preempted under section
560.2(a) because it does not specifically attempt to impose
requirements on lenders, but is of general applicability.  See
12 C.F.R. § 560.2(a). It is exempted from HOLA preemption under
section 560.2(c) if it only incidentally affects lending
operations, or is "otherwise consistent with the purposes of
[section 560.2(a)]."  Id.

Courts diverge in their treatment of state law actions
based on TILA or RESPA violations.  Specific to negligence
claims, many bypass the question of preemption, but dismiss the
claim because TILA and RESPA, in and of themselves, do not
establish a cognizable duty owed by lender to borrower.  See,
e.g., Broderick v. PNC Mortg. Corp., No. 11-10047-JLT, 2013 WL
1187111, at *3 n.63 (D. Mass. Mar. 20, 2013) (Tauro, J.);
Thornes v. IMB Lender Bus. Process Servs., Inc., No. C10-
1716MJP, 2011 WL 677428, at *3 (W.D. Wash. Feb. 15, 2011); Levy
v. JP Morgan Chase, No. 10CV1493 DMS (BLM), 2010 WL 4641033, at
*2 (S.D. Cal. Nov. 5, 2010); Yanik v. Countrywide Home Loans,
Inc., No. CV 10-6268 CAS (RZx), 2010 WL 4256312, at *6 (C.D.

Cal. Oct. 18, 2010).  District courts within the Ninth Circuit typically find state law claims predicated on TILA and RESPA violations to be preempted by HOLA, particularly where the plaintiff has apparently recast his or her claim as one of state law to avoid the time bar under those statutes.  See, e.g., Gallegos v. Wells Fargo Bank, N.A., No. 1:13-CV-608 AWI MJS, 2013 WL3166389, at *5 (E.D. Cal. June 20, 2013); Falcocchia v. Saxon Mortg., Inc., 709 F. Supp. 2d 873, 886 (E.D. Cal. 2010); Newbeck v. Washington Mut. Bank, No. C 09-1599 CW, 2010 WL 291821, at *4 (N.D. Cal. Jan. 19, 2010); Reyes, 541 F. Supp. 2d at 1115.

The Ninth Circuit and its lower district courts have considered primarily consumer protection claims predicated on TILA or RESPA violations.  Courts in that circuit have reasoned that such claims predicated on federal law are preempted by HOLA where allowing the claim would supplement the remedies available under the federal law by, for example, effectively extending the statute of limitations.  Reyes, 541 F. Supp. 2d at 1115 (citing Public Util. Dist. No. 1 of Grays Harbor Cty. Wash. v. IDACOR, Inc., 379 F.3d 641, 648-49 (9th Cir. 2004)); see also, Silvas, 541 F.3d at 1004 ("Appellants were too late to sue under TILA. Their end run [bringing a state claim based on TILA violations] will not do.").

This Court finds the Ninth Circuit's approach to state law claims predicated on TILA and RESPA violations persuasive.[9]  TILA and RESPA are federal statutes regulating disclosure requirements and procedures which directly affect lenders and already have their own enforcement mechanisms.  12 U.S.C. § 2605 (RESPA); 15 U.S.C. §§ 1639, 1640(a) (TILA).  Each has its own limitations period of either one or three years, depending on the implicated section, in which an aggrieved borrower can bring an action based on a lender's violation.  12 U.S.C. § 2614 (RESPA); 15 U.S.C. 1640(e) (TILA).  Other sessions of this court have construed these limitations periods strictly.  See Sturgis, 863 F. Supp. 2d at 93-94.

Common-law negligence has its own statute of limitations unique to Massachusetts, which could potentially extend the time in which TILA or RESPA based claims could be brought.[10]  See Mass. Gen. Laws. ch. 260, § 2A (allowing three years in which to bring a tort action after accrual).  Further, Henning's claim is essentially predicated on federal disclosure requirements.  See

---

[9] While this Court does not employ the same "as applied" approach to HOLA preemption that the Ninth Circuit uses, see Silvas, 514 F.3d at 1006, the mode of "functional analysis" laid out in Dixon is nonetheless consistent with the Ninth Circuit. 798 F. Supp. 2d at 356.

[10] Though the Court need not reach the issue, there is some suggestion that Henning's claims would be time-barred under RESPA and TILA.  Def.'s Mem. Supp. 8.

Third Compl. ¶ 9.  Allowing a negligence claim such as this could potentially expand or change the regulatory scheme imposed on federal lenders in an area over which the OTS has occupied the field.[11]  See 12 C.F.R. § 560.2(a), (b); cf. Reyes, 541 F. Supp. 2d at 1115 (holding consumer protection claim based on TILA violation preempted by HOLA because it would have extended the TILA statute of limitations from one to four years).  Thus, Henning's negligence claim more than "incidentally affects . . . lending operations."  12 C.F.R. § 560.2(c).  For this reason, it is also inconsistent with the policy of field preemption undergirding section 560.2(a).

Henning's negligence claim based on federal statutory duties is accordingly dismissed as preempted by HOLA and its implementing regulations.

### 7.   Count V: Negligence Based on Massachusetts Statutory Duties

Henning claims that Wells Fargo and its agents have violated Massachusetts statutory duties and are thus negligent. Third Compl. ¶¶ 66-68.  This claim fails because to allow a negligence cause of action based on Henning's allegations would more than incidentally affect lending, and Count V is accordingly dismissed as preempted.

---

[11] As an aside, this Court is generally skeptical of imposing negligence duties based on statutes except under circumstances not present here.  See Islam v. Option One Mortg. Corp., 432 F. Supp. 2d 181, 195-196 (D. Mass 2006).

Tort law is state based and generally applicable, meaning that section 560.2(b) does not expressly preempt Henning's negligence claim.  See 12 C.F.R. § 560.2(b).  Indeed, tort is listed in section 560.2(c) as an area of law specifically exempted from HOLA preemption.  Id. § 560.2(c)(4).  The question of preemption, then, turns on whether Henning's negligence claim has an incidental effect on lending or if it is "otherwise consistent with the purposes of [section 560.2(a)]."  Id. § 560.2(c).

To establish negligence, a plaintiff must show that the defendant owed him or her a legal duty.  Jorgenson v. Mass. Port Auth., 905 F.2d 515, 522 (1st Cir. 1990).  To show such a duty here, Henning cites in his complaint various Massachusetts statutes and regulations dealing with lending practices.  Third Compl. ¶¶ 68, 11.

Henning broadly alleges that Wells Fargo has violated a duty established by the Massachusetts Consumer Credit Cost Disclosure Act ("MCCCDA"), Mass. Gen. Laws ch. 140D, §§ 1-35, which regulates credit disclosures as its name suggests.  Henning also cites Code of Massachusetts Regulations, title 940, section 8.05(2), which purports to regulate the disclosure practices of lenders, making it unfair and deceptive for a lender to fail to disclose facts which might influence a borrower's decision.  Id.  Henning further attempts to establish

33

duty based on Code of Massachusetts Regulations, title 940,
section 8.06(1), which essentially mandates truthful disclosures
by lenders and brokers, and Code of Massachusetts Regulations,
title 940, section 8.06(17), which makes unfair and deceptive
the issuance of a loan which is "not in the borrower's interest"
because the lender has an undisclosed conflict of interest with
the borrower.  940 Mass. Code Regs. § 8.06(17).

While mindful of citizens' rights under their own state's
laws, "courts must be wary of artfully pleaded attempts to use
common-law claims as a clandestine way of imposing requirements
on lenders that states otherwise could not enact through
legislation or regulation." Dixon, 798 F. Supp. 2d at 356
(citing McAnaney, 665 F. Supp. 2d at 169 n.39).  To allow
Henning's negligence claim to proceed based on the Massachusetts
statute and regulations supra would be to potentially usurp
federal regulatory authority under HOLA through the backdoor of
state common law.  See Jones v. Home Loan Inv., F.S.B., 718 F.
Supp. 2d 728, 736-37 (S.D. W. Va. 2010) (holding preempted by
HOLA, because the claim was "impermissibly regulatory in
nature", a negligence claim against defendant-lender based on
the plaintiff-borrower's alleged unsuitability for the loan she
was given).  Indeed, several sessions of this court have decided
that the MCCCDA is definitively preempted by HOLA because it
runs afoul of section 560.2(b).  Sturgis, 863 F. Supp. 2d at 92-

93; see Currie, 2013 WL 3379539, at *5.  Henning could not

escape HOLA preemption were he to directly challenge Wells

Fargo's actions under the MCCCDA, see Sturgis, 863 F. Supp. 2d.

at 93, and he is not able to do so by transforming his claim

into a tort action.

The same result attaches with respect to the Massachusetts

regulations with which Henning seeks to establish duty.  All

essentially purport to impose disclosure requirements on lenders

by defining unfair or deceptive practices under chapter 93A.

See infra Part II.B.8; United Cos. Lending Corp. v. Sargeant, 20

F. Supp. 2d 192, 204 (D. Mass. 1998). HOLA explicitly preempts

state law which purports to regulate disclosure requirements.

12 C.F.R. § 560.2(b)(9).  As with the MCCCDA, Henning cannot

directly challenge Wells Fargo's practices under the

regulations, and cannot do so by casting his claim as a tort.

Even were this not the case, this Court has expressed hesitance

to find a negligence duty based on chapter 93A as it is not a

penal or safety statute and provides its own enforcement

mechanism.  Islam v. Option One Mortg. Corp., 432 F. Supp. 2d

181, 196 (D. Mass. 2006).

Henning's negligence claim would have a greater than

incidental effect on lenders because he attempts to impose

requirements under the guise of state common law.  See Jones,

718 F. Supp. 2d at 736-37.  For this reason, it is also

inconsistent with the purposes of section 560.2(a), which
encourages uniformity of lending regulation through federal
field preemption.  Allowing states essentially to regulate
disclosure requirements using tort law does not serve this end.
Thus Count V, Henning's negligence claim based on Massachusetts
statutory duties, is dismissed as preempted by HOLA and its
implementing regulations.

### 8.   Count IV: Violation of Massachusetts General Laws chapter 93A

While not expressly preempted under section 560.2(b),
Henning's chapter 93A claim affects lending, and fails to rebut
the presumption of preemption under section 560.2(c) as its
effect is more than incidental.  Insofar as it is based on
predatory lending as a deceptive practice, Pl.'s Mem. Opp'n 7,
Henning's chapter 93A claim is preempted and therefore
dismissed.[12]

---

[12] Henning also alleges that World violated chapter 93A by
"fail[ing] to make a reasonable settlement offer in response" to
Henning's written demand.  Third Compl. ¶ 65.  Henning's claim
is dismissed insofar as it is based on this assertion because
the response to a potential plaintiff's written demand is
permissive under the statute.  Mass. Gen. Laws ch. 93A § 9(3)
("Any person receiving such a demand for relief who, within
thirty days of the mailing or delivery of the demand for relief,
makes a written tender of settlement which is rejected by the
claimant may, in any subsequent action, file the written tender
and an affidavit concerning its rejection and thereby limit any
recovery to the relief tendered if the court finds that the
relief tendered was reasonable in relation to the injury
actually suffered by the petitioner.").

Under Massachusetts consumer protection law, "unfair or deceptive acts or practices in the conduct of any trade or commerce" are unlawful.  Mass. Gen. Laws ch. 93A, § 2(a). A victorious plaintiff is entitled to reasonable attorney's fees under chapter 93A, and may receive treble damages if the defendant's violation was willful or knowing.  Id. § 9(3), (4). An aggrieved consumer must send a demand letter to a potential defendant at least thirty days prior to filing a complaint "identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered."  Id. § 9(3).

A session of this court has stated that "[s]tate laws prohibiting deceptive acts and practices in the course of commerce are not included in the illustrative list of preempted laws in § 560.2(b)."  Sturgis, 863 F. Supp. 2d at 97 (alteration in original) (quoting Carolyn J. Buck, Office of Thrift Supervision, Preemption of State Laws Applicable to Credit Card Transactions, P-96-14 (Dec. 24, 1996), available at 1996 WL 767462) (internal quotation marks omitted).  The First Circuit has also noted that chapter 93A claims are not preempted by HOLA where the purported violation was based on breach of contract. Yeomalakis v. FDIC, 562 F.3d 56, 61 (1st Cir. 2009).  Because chapter 93A regulates the conduct of businesses generally, rather than lenders specifically, it is not preempted under

section 560.2(b).  See Sturgis, 863 F. Supp. 2d at 97; see also Dixon, 798 F. Supp. 2d at 356-57.

Henning's chapter 93A claim, however, appears to be based primarily on World's predatory lending practices, Pl.'s Mem. Opp'n 7, meaning it affects lending, thus giving rise to a rebuttable presumption of preemption under section 560.2(c). Dixon, 798 F. Supp. 2d at 354 (citing 61 Fed. Reg. at 50,966). Claims under chapter 93A fall within the purview of section 560.2(c)(1), as forms of contract and commercial law.  Sturgis, 863 F. Supp. 2d at 97.  The presumption of preemption is not rebutted, however, because Henning's claim would more than incidentally affect lending operations.

As to state consumer protection laws, a court must consider "the relationship between federal and state laws as they are interpreted and applied, not merely as they are written."  Id. at 97 (quoting Carolyn J. Buck, Office of Thrift Supervision, California Unfair Competition Act, P-99-3 (Mar. 10, 1999), available at 1999 WL 413698) (internal quotation marks omitted). Where the substance of a chapter 93A claim would tend to impose specific requirements on a lender, it is preempted, even if the statute itself is not wholly subject to HOLA preemption under section 560.2(b).  See id.; Currie, 2013 WL 3379539, at *5.

Henning argues that World's lending activity was predatory based on its similarity to the lending in Commonwealth v.

Fremont Inv. & Loan, 452 Mass. 733, 736-41 (2008), which was deemed unfair and deceptive and a likely violation of chapter 93A. Id. at 743-44. These similar characteristics included loans featuring a low introductory rate which ballooned shortly after consummation, high DTI ratios, a loan-to-value ratio of one hundred percent, and other characteristics making it likely that the borrower would default. Id. at 739. While Henning makes a good showing that World's activity was unfair and deceptive on the merits by comparison to Fremont, he fails to account for the fact that preemption was not an issue in that case: the lender was "an industrial bank chartered by the State of California" and not governed by HOLA. See id. at 736.

Even if World's lending was a chapter 93A violation under Massachusetts law, courts must be wary of attempts to use state law claims to impose regulations on federal lending institutions when such regulations would be preempted had the state done so through legislation. Dixon, 798 F. Supp. 2d at 356 (citing McAnaney, 665 F. Supp. 2d at 169 n.39). If this Court offered Henning redress under chapter 93A it would effectively be regulating loan-to-value and DTI ratios, and the permissibility of adjustable rate mortgage loans. These are subject to federal authority, meaning that Henning's chapter 93A claim is preempted, as would state predatory lending laws be preempted by HOLA prior to Dodd-Frank if they imposed regulations on federal

lenders regarding the same or similar subjects.  See Carolyn J.

Buck, Office of Thrift Supervision, Preemption of New York

Predatory Lending Law 1-2, P-2003-2 (Jan. 30, 2003), available

at 2003 WL 24040101 (indicating that a New York predatory

lending law purporting to impose requirements on a federal

lender regarding terms of credit, origination, fees,

disclosures, and servicing of mortgage loans was preempted by

HOLA).  Henning's claim would not have only an "incidental"

effect on federal lending institutions.  12 C.F.R. § 560.2(c);

see, e.g., Fultz, 571 F. Supp. 2d at 1198 (holding preempted

claims which sought to impose requirements on a lender reserved

for the federal government under the guise of state consumer

protection law); cf. Leet v. Cellco P'ship, 480 F. Supp. 2d 422,

434 (D. Mass. 2007) (Saylor, J.) (holding chapter 93A claim

preempted because the alleged facts undergirding the claim

"directly relate[d] to the subject matter" of the Fair Credit

Reporting Act).  Because of its more than incidental effect on

lending and the potential for variable and conflicting lending

regulation, Henning's chapter 93A claim is also inconsistent

with the purposes of section 560.2(a).  See Fultz, 571 F. Supp.

2d at 1198.

     While chapter 93A is a state law of general applicability

not dealing specifically with lending activity, the substance of

Henning's chapter 93A claim would have greater than an

incidental effect on federal lenders.  Courts must not allow litigants to regulate federal lenders under the guise of state law claims.  See Dixon, 798 F. Supp. 2d at 356.  Thus, Henning's chapter 93A claim is preempted by HOLA and is accordingly dismissed.

## III. CONCLUSION

And so, Wells Fargo wins on a technicality.  The Court never addresses the merits of this case and expresses no opinion thereon.  Still, it is appropriate to point out that, were Henning to prove his case on the merits, the conduct of Wells Fargo would be shown to be nothing short of outrageous.  On the other hand, perhaps if Wells Fargo addressed the merits, its conduct would be vindicated by fair-minded American jurors.  A quick visit to Wells Fargo's website confirms that it vigorously promotes itself as consumer friendly, Loans and Programs, page within Home Lending, wellsfargo.com, https://www.wellsfargo.com/mortgage/loan-programs/ (last visited September 17, 2013); a far cry from the hard-nosed win-at-any-cost stance it has adopted here.

The technical (and now obsolete) preemption defense upon which Wells Fargo relies is an affirmative defense which can be waived.  See, e.g., Tompkins v. United Healthcare of New England, 203 F.3d 90, 97 (1st Cir. 2000).  The disconnect between Wells Fargo's publicly advertised face and its actual

litigation conduct here could not be more extreme.  These facts lead this Court to inquire whether Wells Fargo wishes to address Henning's claims on the merits.  After all, it may be that Wells Fargo has done nothing wrong.

**ACCORDINGLY**, it is **ORDERED** that Wells Fargo, within 30 days of the date of this order, shall submit a corporate resolution bearing the signature of its president and a majority of its board of directors that it stands behind the conduct of its skilled attorneys and wishes to avail itself of the technical preemption defense to defeat Henning's claim.

Should it do so, judgment will enter for Wells Fargo. If no such resolution is filed, the Court will deem the preemption defense waived and both Wells Fargo and Henning will have the opportunity to address the merits (i.e., what really happened) at a trial before an American jury.


    **SO ORDERED**


                                        /s/ William G. Young
                                        William G. Young,
                                        District Judge