## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| | : | |
| JOSEPH HENNING, | : | Civil Action No. 1:11-CV-11428-WGY |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| WACHOVIA MORTGAGE, FSB | : | |
| Defendant. | : | |
| | : | |

### MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR RECUSAL

Defendant Wachovia Mortgage, FSB, n/k/a Wells Fargo Bank, N.A. ("Wells Fargo")
respectfully files this Memorandum of Law in Support of its Motion for Recusal.

### FACTS AND HISTORY

Plaintiff Joseph Henning is a Massachusetts resident.  In 2006, he took out a home
mortgage loan from World Savings Bank, FSB ("World Savings"), in the amount of $215,250.
Memorandum and Order "Order" dated September 17, 2013, Docket Entry No. 95, at 5, 8.  Later
that year, he also took out a home equity credit line from World Savings in the amount of
$43,000.  *Id.*

Defendant Wells Fargo Bank, N.A., is a national banking association.  Wells Fargo is the
successor in interest of World Savings, a federal savings bank, and as such, has assumed World
Savings' obligations on Plaintiff's loans.  *Id.* at 2, n.2.  Without going into transactional details
unnecessary to the issues raised herein, subsequent to 2006 World Savings changed its name to
Wachovia Mortgage Corporation, FSB ("Wachovia"), which in turn subsequently merged into
Wells Fargo.  *Id.*

On May 15, 2009, Plaintiff filed his original complaint in Massachusetts state court.  *Id.*
at 3.  All of Plaintiff's claims were based on allegations that World Savings had engaged in
various deceptive or predatory actions in connection with the origination of Plaintiff's loans.  *Id.*
at 4-7.

Wachovia removed the case to this Court on diversity grounds.  *Id*. at 8-9.  In July, 2010, the case was consolidated with another case pending in that District "stemming from mortgages 'for which Wachovia [also] was allegedly responsible.'"  *Id*. at 4.

On August 19, 2010, the Judicial Panel on Multidistrict Litigation transferred the case to the Northern District of California, where a putative class action was pending against Wells Fargo based on allegations similar to those made by Plaintiff here.  *Id*. at 4.  A settlement was reached in the class action which the Northern District of California found to be fair and reasonable.  Plaintiff opted out of the class settlement.  *Id*.  As a result, the case was transferred back to this Court on June 9, 2011, and eventually assigned to this Judge.

Plaintiff  filed his third amended complaint, the operative pleading, on August 29, 2012. *Id*. at 4.  As described more fully in the Order, Plaintiff alleged that World Savings had engaged in a number of predatory or deceptive practices which resulted in Plaintiff acquiring a loan he could not afford.  *Id*. at 4-8.  Based on such allegations, Plaintiff asserted claims for (1) unjust enrichment; (2) equitable relief; (3) violation of the implied covenant of good faith and fair dealing; (4) Massachusetts consumer protection laws; (5) negligence under Massachusetts statutory duties; (6) negligence under federal statutory duties; and (7) breach of contract.

Wells Fargo vigorously disputes Plaintiff's factual allegations.  However, this Motion raises only legal questions going to the issue of the Court's recusal.

On January 11, 2013, Wells Fargo (as World Savings' and Wachovia's successor in interest) filed a motion to dismiss.  Wells Fargo asserted two grounds:  first, that Plaintiff's state law claims were not cognizable under state law; and second, that the Home Owners' Loan Act ("HOLA") also preempted them.

As Wells Fargo demonstrated in its motion to dismiss, World Savings was chartered as a federal savings bank when it issued the loans to Plaintiff in 2006.  *Id*. at 11, n.6.  Consequently, the lending activities underlying Plaintiff's claims were subject to federal Office of Thrift Supervision ("OTS") authority, triggering the preemptive effect of HOLA.  *Id*.

On September 17, 2013, the Court issued its Order resolving the substantive issues raised by Wells Fargo's motion to dismiss.  It concluded that each of Plaintiff's claims was subject to outright dismissal.

The Court first determined that the breach of contract claim, while not preempted by HOLA, was legally insufficient because Plaintiff's allegations of breach were "flatly contradicted by the terms of the mortgage and note."  *Id*. at 16.  Likewise, the "equitable relief" claim was legally insufficient because no such cause of action exists.  *Id*. at 28.

The Court then concluded each of the remaining claims were preempted by HOLA and its implementing regulations.  For example, the Court found that "allowing a negligence claim such as [asserted by Plaintiff] could potentially expand or change the regulatory scheme imposed on federal lenders in an area over which the OTS has occupied the field."  *Id*. at 32; see also *id*. at 34 (negligence claim "clandestine way of imposing requirements on lenders that states otherwise could not enact through legislation or regulation.").

Likewise, the Court concluded the unjust enrichment claim was preempted because it sought to "challeng[e] a lender's disclosure and advertising policy, a power reserved to the federal government."  *Id*. at 26.  See also *id*. at 19-20 (implied covenant claim preempted because it "would effectively impose regulations on a lender").

The Court specifically concluded that each claim "is dismissed," either as legally insufficient or as preempted by HOLA.  *Id*. at 19, 21, 28, 32, 36, 41.

Notwithstanding its conclusion that each claim "is dismissed" (*id*. at 41), the Court did not allow judgment to enter as required by Fed. R. Civ. P. 58(b).  The Court found that "Wells Fargo wins on a technicality" that can be waived.  *Id*. at 41.  The Court observed, that "were Henning to prove his case on the merits, the conduct of Wells Fargo would be shown to be nothing short of outrageous" and "perhaps if Wells Fargo addressed the merits, its conduct would be vindicated by fair-minded American jurors."  *Id*.  The Court remarked that it had visited Wells Fargo's website, wherein it "vigorously promotes itself as consumer friendly . . .; a

far cry from the hard-nosed win-at-any cost stance it has adopted here" by invoking HOLA preemption in its motion to dismiss. *Id*. And it found that "[t]he disconnect between Wells Fargo's publicly advertised face and its actual litigation conduct here could not be more extreme." *Id*. at 41-42. The Court stated "[t]hese facts lead this Court to inquire Whether Wells Fargo wishes to address Henning's claims on the merits. After all, it may be that Wells Fargo has done nothing wrong." *Id*. at 42.

The Court ordered that Wells Fargo must accordingly submit within 30 days a formal corporate resolution, signed by the President and a majority of the Board, indicating Wells Fargo "wishes to avail itself of the technical preemption defense to defeat [Plaintiff's] claim." *Id*. The Court further ordered that, if Wells Fargo complied, "judgment will enter for Wells Fargo." *Id*. But, "if no such resolution is filed, the court will deem the preemption defense waived [and the parties] will have the opportunity to address the merits (i.e., what really happened) at a trial before an American jury." *Id*. The Court cited no authority for its power to direct the filing of such a corporate resolution on pain of waiver of the entry of judgment and restoration of dismissed claims for trial.

Wells Fargo filed an Emergency Motion to Stay pending mandamus review with this Court on September 25, 2013. Docket Entry No. 96.

On Friday September 27, 2013 at 11:33 a.m., Judge Nathaniel M. Gorton, who was sitting as the designated emergencies judge, issued an Order denying the First Emergency Motion to Stay "without prejudice." Docket Entry No. 97. The Order further stated: "Because the contested order of the presiding judge does not require the moving party to take substantive action before next week at which time that judge will be available to consider the matter further, the emergency motion to stay is denied without prejudice." *Id*.

Wells Fargo filed a Petition for Writ of Mandamus ("Petition") with the United States Court of Appeals for the First Circuit on September 30, 2013.

On October 1, 2013, the District Court entered a docket order setting a hearing on the

4

First Emergency Motion to Stay for October 3, 2013.  Docket Entry No. 98.

On October 2, 2013, Plaintiff filed Plaintiff's Response to Motion to Stay.  Docket Entry No. 99.  Plaintiff took "no position on the Defendant's Motion to Stay" and indicated that the Court had excused his appearance at the October 3, 2013 hearing.  *Id.*

On October 3, 2013, the District Court held a hearing on the stay request.  The transcript of that hearing is attached hereto as Exhibit A.  The Court began the hearing by noting that Wells Fargo's motion to stay was unopposed, and that the Court had excused Plaintiff's counsel from attending at counsel's request.  *Id.* at 2.  The Court stated it had read Wells Fargo's "well-crafted" Petition, but considered it to be "devoid of merit[.]"  Nevertheless, the Court acknowledged Wells Fargo's right to "present [its] views to the Court of Appeals," "[a]nd so" it was "of a mind to allow the stay."  *Id.*

The Court continued by remarking that it could have issued a stay without calling Wells Fargo's counsel into court, "but I called you in, just as a practical matter, to ask you, now that we've had some time for reflection, is it the position of Wells Fargo to press forward with the mandamus matter?"  *Id.*  It next stated, "I am neutral on the point.  I will defend the Court's position.  But I have no personal feelings.  I just want to ask you.  Is it?"  *Id.* at 2-3.

After Wells Fargo's counsel confirmed that the Petition was pending with the First Circuit, the Court responded, "Yes.  And you intend to press it?"  *Id.* at 3.  Wells Fargo had filed the Petition just three days earlier.  Its counsel reiterated that Wells Fargo had already pressed the Petition, to which the Court replied, "Very well.  That is your right" and stayed the corporate resolution order "until the order of the First Circuit" is issued.  *Id.*

After confirming that Wells Fargo was pursuing the Petition, the Court then brought up its dismissal order.  Although no party had requested reconsideration of that order, the Court stated that "[i]n light of all the furor that your action has caused, I have had occasion to go back and look over my opinion with great care."  *Id.*  The Court then stated it was "increasingly uncertain that [it] ha[d] reached the right result" as to preemption.  *Id.*  In its original dismissal

order, the Court had concluded that the Dodd-Frank Act had not retroactively replaced the presumption in favor of HOLA preemption with a presumption against finding preemption.  It recognized in its original order that, "[c]ourts have uniformly held . . . that the provisions of Dodd-Frank are not retroactive, and HOLA preemption applies to mortgages originated before either July 21, 2010 or July 21, 2011."  Order at 13 (citing *e.g., Molosky v. Washington Mut., Inc.*, 664 F.3d 109, 113 n. 1 (6th Cir. 2011)).

At the hearing, however, the District Court stated it had "gone back and looked," and determined that following the enactment of Dodd-Frank, "there is significant legal precedent that rather than a presumption *in favor*, in fact there is a presumption *against* preemption."  Exhibit A at 4. (emphasis added).  The Court cited no such precedent.  In fact, as explained below, every decision to consider the matter has concluded, as the Court originally did, that Dodd-Frank Act had no impact on the preemption analysis applicable to cases such as the present one.

Nonetheless, citing that it was "increasingly uncertain" about the possible impact of Dodd-Frank, the Court *sua sponte* vacated its dismissal order, directing the parties to file new briefs on preemption within 60 days.  *Id*. at 5.  The Court stated its oral comments would constitute its formal order.  *Id*.

Six days later, on October 9, 2013, the Court entered a *sua sponte* order entitled, "Order For Pretrial Conference."  Docket Entry No. 103.  In the Order, the Court set a status conference for October 23, at 2:30 p.m., "to consider possible settlement and to address through counsel the matters set forth in Fed. R. Civ. P. 16 (c)(2)(A) and (P)."  PA 63-64.  Those portions of Rule 16 provide:  "At any pretrial conference, the court may consider and take appropriate action on the following matters: . . . (A) formulating and simplifying the issues and eliminating frivolous claims and defenses; . . . (P) facilitating in other ways the just, speedy and inexpensive disposition of the action."  The Court went on to order "the president of Wells Fargo [to] attend the conference in person or by telephone to discuss possible settlement."  *Id*.  "And in light of [that] order," the Court concluded that "the certification requirement set forth in this Court's

6

order of September 17, 2013 is superogatory and it is vacated." *Id.* at 64.

Wells Fargo filed a Supplement to Petition for Writ of Mandamus ("Supplement") with the First Circuit on October 10, 2013. The Supplement apprised the First Circuit of the events which took place after the Filing of the Petition, and that as a result of them, even if the Court invalidated the corporate "affirmation" requirement, the case would not be over. Accordingly, to preserve the appearance of justice, and to ensure that any further rulings and proceedings are not tainted by events in this case to date, Wells Fargo asked the First Circuit to reassign this case on remand to another judge.

Also on October 10, 2013, Wells Fargo filed a Second Emergency Motion to Stay Pending Mandamus Review ("Second Emergency Motion to Stay"), asking this Court to preserve the status quo until the First Circuit could rule on the Petition and Supplement. Therein, Wells Fargo argued to this Court that there was good cause for the stay because, as is set forth in the Petition and Supplement, Wells Fargo was likely to succeed on the merits. Wells Fargo noted that the Court's new Briefing Order requires compliance within 60 days (by Monday, November 18, 2013), and the Court's new Order for Pretrial Conference requires that Wells Fargo's President attend a pretrial conference in person or via telephone 14 days after its issuance, at 2:30 p.m. on October 23, 2013. *Id.* at 4-5. It stated that the Court's Order for Pretrial Conference in particular left Wells Fargo very little time to seek an emergency stay from the First Circuit should this Court decline to issue the stay. *Id.* at 5. Neither party had requested such a conference, there was no trial scheduled, and Wells Fargo identified that there was no apparent prejudice or harm in delaying it for a sufficient period for Wells Fargo's Petition to be resolved by the First Circuit. Wells Fargo's pleading further stated that this Court's allowance of the stay would permit the First Circuit the opportunity to consider the Petition and Supplement on a non-emergency basis, and that there was no reason for the First Circuit to have to consider them on an emergency basis.

On October 11, 2013, the Court's Clerk notified Wells Fargo's counsel that the Judge

would not return to court until October 15, 2013, and that Wells Fargo's Second Emergency Motion to Stay would be handed to him first thing on that morning.

Plaintiff did not file a response to Wells Fargo's Second Emergency Motion to Stay.

On October 15, 2013, the Court denied Wells Fargo's unopposed Second Emergency Motion to Stay, without explanation.

On October 21, 2013, the First Circuit issued its Judgment.  A copy of the Judgment is attached hereto as Exhibit B.  It found that "[a]s originally presented, the petition requested a writ which, if granted, would have directed the district court to vacate part of an order that it entered on September 17, 2013, and to enter judgment in favor of petitioner." *Id*. at 1.  This Court, however, had vacated that part of the order on October 9, 2013.  The First Circuit observed that, as a result, Wells Fargo "now effectively seeks an order from this court reassigning this case to a different district court judge 'on remand.'" *Id*.  But, the First Circuit determined that "[t]o the extent that the petition now seeks a writ disqualifying the district court judge from this case, such a request should ordinarily be presented in the first instance to the district court judge." *Id*.  Because Wells Fargo had not yet done so, and this Court had vacated the order Wells Fargo challenged in its Petition, the First Circuit held that Wells Fargo "has not established a clear and indisputable right to mandamus relief on any of the grounds raised." *Id*. at 2.  In light of this, it denied Wells Fargo's Emergency Motion to Stay Pending Mandamus Review as moot.  And in light of this, Wells Fargo is presenting its motion to recuse to this Court in the first instance.

## STANDARD

Title 28, U.S.C., § 455(a) provides that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  Section 455(b) provides further that "[h]e shall also disqualify himself . . . (1) Where he has a personal bias or prejudice concerning a party . . . ."

"The issue of disqualification in this Circuit turns on whether the charge of lack of

impartiality is grounded on facts that would create a reasonable doubt concerning the judge's impartiality, not in the mind of the judge himself or even necessarily in the mind of the litigant filing the motion under 28 U.S.C. § 455, but rather in the mind of a reasonable man." *Town of Norfolk v. United States Army Corps of Engineers*, 968 F.2d 1438, 1460 (1st Cir. 1992). "Such a standard allows recusal when objective appearances provide a factual basis to doubt impartiality, even though the judge himself may subjectively be confident of his ability to be evenhanded." *Blizzard v. Frechette*, 601 F.2d 1217, 1221 (1st Cir. 1979).

A judge should thus recuse himself "when the facts asserted 'provide what an objective, knowledgeable member of the public would find to be a reasonable basis for doubting the judge's impartiality.'" *In re Boston's Children First*, 244 F.3d 164, 167 (citing *In re United States*, 666 F.2d at 695). While the First Circuit "allow[s] district court judges a 'range of discretion' in the decision not to recuse" it has counseled "that the district court should exercise that discretion with the understanding that, if the question of whether § 455(a) requires disqualification is a close one, the balance tips in favor of recusal." *Id.* (internal quotation marks omitted).

A District Court "judge's views on matters of law and policy ordinarily are not legitimate grounds for recusal, even if such views are strongly held." *U.S. v. Snyder*, 235 F.3d 42, 48 (1st Cir. 2000). And "a judge ordinarily may not be disqualified merely for reprehending a party's legal position . . . ." *Id.* "*But* when a judge proves unable to put aside his personal convictions in order to carry out the law, when his hostility toward a litigant's position has become so pervasive that he cannot reasonably hope to provide a fair hearing, then recusal is of course warranted." *Id.* (emphasis added) (citing Richard E. Flamm, Judicial Disqualification: Recusal and Disqualification of Judges § 10.4 (1996) ("recusal appropriate where judge's mind has become 'irrevocably closed' as to the issues in a specific case") (collecting cases); *In re United States*, 158 F.3d 26, 34 (1st Cir. 1998) ("recusal appropriate where judge appears to harbor 'an aversion, hostility or disposition of a kind that a fair-minded person could not set aside when judging the

dispute'") (quoting *Liteky v. United States*, 510 U.S. 540, 557-58 (1994) (Kennedy, J., concurring in the judgment)).

Thus, "§ 455(a) is triggered by an attitude or state of mind so resistant to fair and dispassionate inquiry as to cause a party, the public, or a reviewing court to have reasonable grounds to question the neutral and objective character of a judge's rulings or findings." *In re U.S.,* 158 F.3d 26, 34 (1st Cir. 1988). "[A] high threshold is required to satisfy this standard. Thus, under § 455(a), a judge should be disqualified only if it appears that he or she harbors an aversion, hostility or disposition of a kind that a fair-minded person could not set aside when judging the dispute." *Id*. (citing *Liteky*, 510 U.S. 540 at 557-58 (Kennedy, J., concurring in the judgment)." *Id*.

Although "[j]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion, . . . surrounding comments or accompanying opinion", as well as "reliance upon an extrajudicial source," can constitute a valid basis. *Liteky*, 510 U.S. at 555. Further, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion *unless* they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id*. (emphasis added). "Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. *They may do so if they reveal an opinion that derives from an extrajudicial source*; *and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible*." *Id*. (emphasis and underlining added).

"When 'the issue of partiality has been broadly publicized, . . . the claim of bias cannot be labeled as frivolous' [and] the propriety of judicial disqualification need not await end-of-case review.'" *In re U.S.*, 158 F.3d at 30 (citing *In re U.S.*, 666 F.2d 690, 694 (1st Cir. 1981); *see also In re Bulger*, 710 F.3d 42, 45-46 (1st Cir. 2013).

# ARGUMENT

The Court should recuse itself pursuant to 28 U.S.C. §§ 455(a) and 455(b)(1).  The Court's recusal is justified by four independent grounds, each of which, standing alone, is sufficient to warrant the Court's recusal.

> **1.  *An objective, knowledgeable member of the public would find to be a reasonable basis for recusal that the Court has been unable to put aside its personal convictions in order to carry out the law, and that from its hostility toward Wells Fargo's invocation of HOLA preemption it cannot reasonably hope to provide a fair hearing*.**

An objective, knowledgeable member of the public would find to be a reasonable basis for recusal that this Court has repeatedly demonstrated its unwillingness to implement HOLA's broad preemptive scheme in this case.  First, the Court refused to enter judgment—though it was mandated by the ruling in its original order dismissing all of Plaintiff's claims without leave to amend—expressly because the Court viewed HOLA preemption to be an "obsolete" "technicality."  Order at 41-42.  As set forth in Wells Fargo's Petition, there is no basis in HOLA or in the Federal Rules of Civil Procedure for the District Court to have imposed a "corporate resolution" hurdle to Wells Fargo's assertion of the defense or to the Court's entry of judgment.  Pet. at 14-15.

The Court's *sua sponte* decision to vacate its dismissal Order following Wells Fargo's filing of the Petition creates the appearance that it cannot reasonably hope to provide Wells Fargo with a fair hearing.  Standing alone, the Court's action in first inquiring whether Wells Fargo would press its Petition, before it vacated the portion of its Order that had entitled Wells Fargo to a dismissal, has created the appearance that it would not have vacated the portion of its Order if Wells Fargo had not pressed its Petition.  In other words, the Court's inquiry followed by its action has created the appearance that it retaliated against Wells Fargo for pressing the Petition.

Additionally, the Court vacated its dismissal based on uncertainty it expressed as to whether the Dodd-Frank Act had, in fact, retroactively eliminated HOLA's presumption of

preemption.  Hearing Transcript at 3.  But there is no basis for the "uncertainty" that the Court expressed, because the entirety of the case law—including two circuit court decisions—has authoritatively recognized (as did this Court's original order)[1] that the Dodd-Frank Act did not do so.

The Dodd-Frank Act—by its terms—is not retroactive for OTS regulations such as HOLA, 12 C.F.R. § 560.2.  It states that the Act "shall not be construed to alter or affect the applicability of any regulation, order, guidance, or interpretations prescribed, issued, and established by the Comptroller of the Currency or the Director of the Office of Thrift Supervision regarding the applicability of State law under Federal banking law to any contract entered into on or before the date of enactment of this Act . . . ."  12 U.S.C. § 5553.

And *all* of the cases to discuss whether the Dodd-Frank Act altered HOLA preemption for loans entered into before its enactment have squarely held that Dodd-Frank did not retroactively eliminate HOLA field preemption.  *See McCauley v. Home Loan Inv. Bank, F.S.B.*, 710 F.3d 551, 554 n.2 (4th Cir. 2013) (HOLA preemption was not retroactively narrowed because "Congress did not direct such retroactive application in the Dodd–Frank Act"); *Molosky v. Washington Mutual, Inc.*, 664 F.3d 109, 113 n. 1 (6th Cir. 2011) (Dodd-Frank "provisions came into effect on July 21, 2011, and have no retroactive effect with regard to" HOLA's preemption before that date); *Sovereign Bank v. Sturgis*, 863 F. Supp. 2d 75, 91 n. 9 (D. Mass. 2012) (same); *Davis v. World Savings Bank, FSB*, 806 F. Supp. 2d 159, 166 n. 5 (D. D.C. 2011) (same); *Chao v. Aurora Loan Services, LLC*, 2012 WL 6652442, at *3 n.3 (N.D. Cal. Dec. 20, 2012) (Dodd-Frank "amendments are not retroactive" and "Accordingly the Court applies the [field] preemption standard" that pre-existed Dodd-Frank); *Haggarty v. Wells Fargo Bank, N.A.*, 2012 WL 4742815, at *3 n.2 (N.D. Cal. Oct. 3, 2012) (Dodd-Frank "did not apply retroactively, . . . and so [*Silvas v. E\*Trade Mortgage Corp.*, 514 F.3d 1001 (9th Cir.2008)]'s field preemption

---

[1] The Court recognized in its original Order that, "[c]ourts have uniformly held . . . that the provisions of Dodd-Frank are not retroactive, and HOLA preemption applies to mortgages originated before either July 21, 2010 or July 21, 2011."  Order at 13 (citing, *e.g.*, *Molosky v. Washington Mut., Inc.*, 664 F.3d 109, 113 n. 1 (6th Cir. 2011)).

analysis applies to this case."); *Yau v. Deutsche Bank Nat. Trust Co. Americas*, 2011 WL 8327957, at *4 (C.D. Cal. May 9, 2011) (Dodd-Frank did not retroactively change HOLA's occupation of the field preemption standard); *Brown v. Wells Fargo Bank, N.A.*, 869 F. Supp. 2d 51, 56 n.5 (D. D.C. 2012) (same).

This Court's original Order had recognized this point, observing that that "[c]ourts have uniformly held . . . that the provisions of Dodd-Frank are not retroactive, and HOLA preemption applies to mortgages originated," like Plaintiff's mortgage, before either 2010 or 2011.  Order at 13-14 (collecting cases).

There is no apparent "uncertainty" about the scope of HOLA preemption.  And this Court has yet to receive any briefing to indicate its original ruling was actually in error.  Its *sua sponte* decision to *vacate* its ruling rather than to *stay* it pending additional briefing suggests to an objective, knowledgeable member of the public that it did so to evade appellate review and because of its unwillingness to follow settled law -- and its inclination to instead force a jury trial "on the merits" as it stated in its original Order.

Indeed, the corporate affirmation requirement appears functionally still in place, just re-packaged as a pre-trial conference order specifically requiring Wells Fargo's President to participate in a Rule 26 conference for the express purpose of "formulating and simplifying the issues, and eliminating frivolous claims or defenses."  Order for Pretrial Conference at 1-2 (citing Fed. R. Civ. P. 26(c)(2)(A)).  The Court appears determined to press ahead with pre-trial proceedings despite the pending, case-dispositive HOLA preemption issue, to maintain a back-door corporate affirmation requirement despite vacating its original order, and ultimately to reject HOLA preemption, so that "perhaps if Wells Fargo addressed the merits, its conduct would be vindicated by fair-minded American jurors."  *Id*. at 41; *see also id.* at 42 ("If no such resolution is filed, the Court will deem the preemption defense waived and both Wells Fargo and Henning will have the opportunity to address the merits (i.e., what really happened) at a trial before an American jury.").

In sum, having already refused to enter judgment in accordance with the HOLA law, having vacated its preemption ruling despite case law uniformly requiring it, and having re-packaged its corporate resolution requirement in a manner which might reasonably be viewed as an effort to retaliate and evade appellate review, a reasonable and informed member of the public would be justified in concluding that the Court is "unable to put aside his personal convictions in order to carry out the law" and that his "hostility toward" Wells Fargo's litigation "position has become so pervasive that he cannot reasonably hope to provide a fair hearing" to Wells Fargo in this case.  *Snyder*, 235 F.3d at 48; *see also Liteky*, 510 U.S. at 555 ("opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings [that] display a deep-seated . . . antagonism that would make fair judgment impossible" justify recusal).

   2.   ***An objective, knowledgeable member of the public would find to be a reasonable basis for recusal that surrounding comments in the Court's rulings reveal such a high degree of favoritism or antagonism that the Court cannot reasonably hope to provide a fair hearing.***

   In both this case and in *Dixon v. Wells Fargo Bank, N.A.,* No. 1:11-cv-10368-WGY ("*Dixon*"), this Court has made surrounding comments or accompanying opinion in its rulings which reveal such a high degree of favoritism towards mortgage borrowers or antagonism towards mortgage lenders, as Wells Fargo in particular, as to allow an objective, knowledgeable member of the public to find a reasonable basis exists that fair judgment before this Court in this case is impossible.  *Liteky*, 510 U.S. at 555.

   The Dixons had sought "to enforce Wells Fargo's alleged promise to engage in negotiating a loan modification."  *Dixon* Memorandum and Order dated July 22, 2010, at 3.  They "argu[ed] that the bank's initiation of foreclosure proceedings without warning show[ed] its promise to consider their eligibility for a loan modification was insincere," and "ask[ed] not only that the foreclosure be halted but also that Wells Fargo be returned to its place at the bargaining table."  *Id*. at 4-5.  This Court recognized "[t]he longstanding reluctance of courts to

enforce open-ended 'agreements to agree'" and that "parties ought to be allowed to step away unscathed if they are unable to reach a deal." *Id*. at 9-10.  It observed, "the complaint [in *Dixon*] plainly alleges that the parties had 'an agreement to enter into a loan modification agreement,' but as [a] matter of law '[a]n agreement to reach an agreement is a contradiction in terms and imposes no obligations on the parties thereto.'" *Id*. at 10-11 (citing *Rosenfeld v. U.S. Trust Co.*, 290 Mass. 210, 217 (1935)).  The Court denied Wells Fargo's motion to dismiss the plaintiffs' promissory estoppel claim on HOLA preemption and other legal grounds, despite acknowledging that "today's result is an anomaly" and that "virtually no other court has upheld a claim for promissory estoppel premised on such facts."  *Id.* at 29-30, 34.[2]

In doing so, the Court, having conducted no evidentiary proceedings, commented that "Wells Fargo's decision to foreclose without warning was unseemly conduct at best" and that Wells Fargo "opportunistically has strung along the promisees."  *Id*. at 22.  It also stated "that Wells Fargo's conduct, at a minimum, was shabby and doubtless would not be followed by conscientious mortgagees."  *Id*. at 25, n.1 (internal citation marks omitted).  It concluded that the type of life situation out of which the Dixons' case arises - a devastating and nationwide foreclosure crisis that is crippling entire communities - cannot be ignored.  Distressed homeowners are turning to the court in droves, hoping for relief for what they perceive as misconduct by their mortgage lenders."  *Id*. at 28.  The Court referenced that "[w]ith the national housing market once again rattled by an overwhelming number of foreclosures, other federal

---

[2] The Court found that the Dixons had admitted during oral argument "that there was no guarantee of a modification by Wells Fargo, only a verbal commitment to determine their eligibility for a modification if they followed the bank's prescribed steps."  *Id*. at 11.  And the Court found that, based solely on the Dixons' allegations and admissions, "because the parties had not yet begun to negotiate the terms of a modification, . . . Wells Fargo's promise . . . more closely resembles an 'agreement to negotiate.'"  *Id*.  It recognized that "[t]o be sure, Massachusetts courts have tended to treat agreements to negotiate as variants of open-ended agreements to agree [that do] not create a binding contract.  *Id*. at 11-12.  It took note that "[a]s with open-ended agreements to agree, judicial enforcement of vague agreements to negotiate would risk imposing on parties contractual obligations they had not taken on themselves."  *Id*. at 11.  It found that the parties' alleged "failure to elaborate on the boundaries of that duty to negotiate . . . would seem to militate against enforcement of it."  *Id*. at 13.  And it concluded that, "[a]dmittedly, the courts of Massachusetts have yet to formally embrace promissory estoppel as more than a consideration substitute."  Id. at 14-15.  It still upheld the claim.

courts have been grappling recently with the [HOLA] preemption issue in cases factually indistinguishable from the present one," without reaching a consensus.  *Id*. at 47.  It sided with those courts which had denied HOLA preemption.

The Court then turned to its "**CONCLUSION, SCHEDULING ORDER, and SOME RUMINATIONS**" -- i.e., "surrounding comments or accompanying opinion", *Liteky*, 510 U.S. at 555.  Order at 52 (emphasis in original).  It wrote:  "Courts across the country are being saddled with a rapid escalation of foreclosure filings due to the fallout from the subprime foreclosure crisis.  Millions of homeowners stand to lose their homes in the United States . . ., and hundreds of billions of dollars in home equity will be lost as a result by all homeowners, not just those in default on their mortgages." *Id*. (citing Raymond H. Brescia, *Beyond Balls and Strikes:  Towards a Problem Solving Ethic in Foreclosure Proceedings*, 59 Case W. Res. L. Rev., 305, 305 (2009).  And it quoted from a law review article that:

> Instead of abating, the foreclosure crisis has turned into an economic crisis.
> Today, job loss now pushes many homeowners with prime mortgages into
> foreclosure while continuing market decline leaves other owing more on their
> mortgages than their homes are worth.  Current estimates have twenty-five
> percent of houses 'underwater,' and some analysts predict as much as forty-eight
> percent of all residential properties nationwide will have negative equity between
> their mortgage balances and their property values before the housing market
> recovers.

*Id*. at 52-53 (quoting Robin S. Golden, *Building Policy Through Collaborative Deliberation:  A Reflection on Using Lessons from Practice to Inform Responses to the Mortgage Foreclosure Crisis*, 38 Fordham Urb. L. J. 733, 734 (2011)).

The Court found that "to a significant extent, our national economy may depend upon promptly sorting out the issues raised here" in this single foreclosure action involving the Dixons' home, and concluded that "[a] prompt trial of this case is thus absolutely crucial." *Id*. at 53.  The Court ordered Wells Fargo to be ready for trial in a mere 46 days, although discovery had not yet begun. *Id*. at 55.  The 12-person jury agreed, unanimously, with Wells Fargo.

Similarly, the Court's gratuitous remarks that concern Wells Fargo in this case were

made within its "**CONCLUSION**" in its Order, that begins with, "And so, Wells Fargo wins on a technicality . . . ."  *Id.* at 41 (emphasis added).

   3.   ***The media coverage and "furor" the Court acknowledged at the October 3 hearing would warrant an objective, knowledgeable member of the public in finding a reasonable basis for doubting the Court's impartiality.***

   During the October 3, 2013 hearing, the Court expressed that "[i]n light of all the furor that your action has caused, I've had occasion to go back and look over my opinion with great care."  Transcript at 3.  The only "action" that Wells Fargo took was to file a motion to dismiss pursuant to Rule 12(b)(6).  The filing of a motion to dismiss, particularly one that the Court has held to be legally meritorious, is not a "furor."  Respectfully, the only "furor" is that which the Court expressed in its Order, and the resulting media swirl.  Wells Fargo's motion to dismiss and Petition were not a furor, or newsworthy.

   PR Newswire put out a press article on September 19, 20013, extensively quoting from the Court's Order, entitled:  "Federal Judge Challenges Wells Fargo to do the Right Thing:"  *See* Exhibit C.  The "right thing" that the article refers to is that ". . . United States District Court Judge William Young . . . challenged Wells Fargo to live up to their advertising and marketing as a 'consumer friendly' bank by waiving a technical defense that would deny a jury the ability to hear and render a verdict in a case of 'outrageous' facts of wrongdoing and fraud in one of its loan program[s]."  *Id.*  The Massachusetts Lawyers Weekly ran a similar article entitled:  "Judge dares bank to waive preemption defense."  *See* Exhibit D.

   The Court's Order was published in Lexis-Nexis Law360's "The Week in Judicial Benchslaps."  The Law360 article states that the Court "went to lengths to say that while the bank can duck further litigation under a preempting Home Owners Loan Act argument, that doesn't mean it should."  *See* Exhibit E.  It quotes from the Court's Order that "[i]t is appropriate to point out that, were [the plaintiff] to prove his case on the merits, the conduct of Wells Fargo would be shown to be nothing short of outrageous" and that the Court had said "the bank 'wins on a technicality.'"  *Id.*  It observed that "[r]eferring to Wells Fargo's advertising, the judge said

the bank 'vigorously promotes itself as consumer friendly,' a stance he called 'a far cry from the hard-nosed win-at-any-cost stance it has adopted here." *Id*. The article also quotes from the portion of the Court's Order where it concluded that if Wells Fargo provided the corporate resolution the Court sought from Wells Fargo's President and Board, "judgment will enter for Wells Fargo." But "[i]f no resolution is filed, the court will deem the preemption defense waived and both Wells Fargo and [the plaintiff] will have the opportunity to address the merits (i.e., what really happened) at a trial before an American jury." *Id*.

The Court's Order was also published on the front page of the Business Section of The New York Times. The article, entitled "Why Judges Are Scowling at Banks," characterizes the Court's ruling as "especially stinging." *See* Exhibit F. It states that the Court "agreed with the bank's argument that federal laws pre-empted the state law remedies Mr. Henning was seeking, but he did so reluctantly, calling it a win based 'on a technicality.'" *Id*. The article characterizes the Court's decision as having "chastised" Wells Fargo, and quotes Plaintiff's lawyer as having "said that he didn't know why the judge made the ruling but the judge appeared to want the case to be heard by a jury of Mr. Henning's peers, people who may have had their own experiences with questionable bank practices." *Id*.

The press coverage resulting from and quoting the Court's Order provides substantial grounds, in and of itself, for an objective, knowledgeable member of the public to conclude there exists a reasonable basis for doubting the Court's impartiality. *See In re Boston's Children First*, 244 F.3d at 167; *In re U.S.*, 158 F.3d at 30. None of this is relevant to a neutral inquiry of whether Wells Fargo is entitled to a dismissal of the case at the outset pursuant to law and procedure.

The Court's comments about Wells Fargo in its dismissal order in *Dixon* were also published in the media, including on the front page of the Massachusetts Lawyers weekly, giving additional weight to this appearance. *See* Exhibit G.

4.   ***The Court's reliance upon an extrajudicial source, as well as its surrounding comments or accompanying opinions, would warrant an objective, knowledgeable member of the public in finding a reasonable basis for doubting the Court's impartiality.***

The Order in this case faults Wells Fargo that "[a] quick visit to Wells Fargo's website confirms that it vigorously promotes itself as consumer friendly, <u>Loans and Programs</u>, page within <u>Home Lending</u>, wells fargo.com, https://www.wellsfargo.com/mortgage/loan-programs/ (last visited September 17, 2013); a far cry from the hard-nosed win-at-any cost stance it has adopted here."  Order at 41.  Wells Fargo's promotion of itself on its website as "consumer friendly" is neither admissible nor relevant to a motion to dismiss.  Any business, including a consumer friendly one, has the absolute right to raise legal defenses at the pleadings stage in litigation brought by its consumers, without being viewed adversely by a Judge.

No party made this argument to the Court -- the Court accessed Wells Fargo's website and came up with this position on its own.  The Court's website is an extrajudicial source.  An objective, knowledgeable member of the public has a reasonable basis to conclude from the Court's accessing this extrajudicial source, and its conclusion that Wells Fargo's mere assertion of a federal preemption defense at the pleadings stage is "hard-nosed win-at-any-cost" litigation purportedly in conflict with this extrajudicial source, that a doubt exists of whether the Court is impartial.  *See Liteky*, 510 U.S. at 555; *In re Boston's Children First*, 244 F.3d at 167.  Indeed, Plaintiff chose to opt out of a settlement that the District Court for the Northern District of California found to be fair and reasonable, to press his lawsuit against Wells Fargo.  The District Court's conclusion that Wells Fargo engaged in "hard-nosed win-at-any cost" conduct by defending itself with a 12(b)(6) motion to dismiss on federal preemption and other grounds besides being extrajudicial, is, with respect, entirely unwarranted and unfair.  And to a reasonable member of the public, is indicative of bias.

The Court's accessing and relying upon the extrajudicial source of Wells Fargo's website and the improper conclusions that the Court drew from it have been extensively reported in the media.  *See* <u>Exhibits C-F</u>, greatly heightening the need for recusal.  *See In re U.S.*, 158 F.3d at 30.

## CONCLUSION

For the foregoing reasons, Wells Fargo respectfully requests that the Court recuse itself. The issue is not what the Court or even Wells Fargo thinks regarding whether the Court can provide Wells Fargo with a fair trial, *Town of Norfolk*, 968 F.3d at 1460, but rather that the "objective appearances provide a factual basis to doubt impartiality, even though the judge himself may subjectively be confident of his ability to be evenhanded." *Blizzard*, 601 F.2d at 1221. The objective appearance that exists in this case is that Wells Fargo will be trying it against the Court, as much or more as against the plaintiff. The Court is obligated to recuse itself in the interest of ensuring that objective and informed members of the public may have confidence in the outcome of these proceedings, whatever their outcome may be. *See id.*

Dated:  October 22, 2013

Respectfully submitted,

THE DEFENDANT,
WACHOVIA MORTGAGE, FSB, n/k/a
WELLS FARGO BANK, N.A.

By its attorneys,

/s/ David M. Bizar
David M. Bizar
dbizar@seyfarth.com
SEYFARTH SHAW LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, Massachusetts 02210-2028
Telephone:  (617) 946-4874
Facsimile:   (617) 790-5368

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants, as identified on the Notice of Electronic File ("NEF"), and paper copies will be sent to those indicated as non-registered participants on October 22, 2013, by first class mail.

/s/ David M. Bizar
David M. Bizar